RECEIVED AND FILED
02 APR 16 PM 1:56
U.S. BANKRUPTCY COURT
PATRICIA GRAY, CLERK

15 APR REC'D
ORIGINAL

RON BENDER (California SBN 059695)
NELLWYN VOORHIES (California SBN 168698)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
1801 Avenue of the Stars, Suite 1120
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

SALLIE B. ARMSTRONG (Nevada SBN 001243)
ARMSTRONG MILLER, LLP
427 West Plumb Lane
Reno, Nevada 89509
Telephone: (775) 329-5900
Facsimile: (775) 786-5443

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF

RENO, NEVADA

| | |
|---|---|
| In re<br><br>STATE LINE HOTEL, INC., a Nevada corporation,<br><br>Debtor.<br><br>☐ Affects this Debtor.          /<br>☒ Affects all Debtors.          /<br>☐ Affects STATE LINE CASINO, a Nevada general partnership;/<br>☐ Affects STATE LINE PROPERTIES, INC., a Utah Corp.          /<br>☐ Affects STATE LINE PROPERTIES, LTD., a Utah limited partnership,  /<br>☐ Affects STATE LINE APARTMENTS, LTD., a Utah general partnership,  /<br>☐ Affects JIM'S ENTERPRISES, INC., a Nevada Corp.          /<br>☐ Affects SMITH PROPERTIES, a Nevada general partnership/ | Case No. BK-N-02-50085 GWZ<br>Chapter 11 Jointly<br>Administrated With<br><br>BK-N-02-50081 GWZ<br>BK-N-02-50083 GWZ<br>BK-N-02-50082 GWZ<br>BK-N-02-50086 GWZ<br>BK-N-02-50084 GWZ<br>BK-N-02-50080 GWZ<br><br>CHAPTER 11<br><br>ORDER APPROVING BIDDING PROCEDURES<br><br>Date:    April 8, 2002<br>Time:    2:00 p.m. |

1

A hearing was held on April 8, 2002, at 2:00 p.m., before the Honorable Gregg W. Zive, United States Bankruptcy Judge, at the Clifton Young Federal Building, 300 Booth Street, Bankruptcy Courtroom, First Floor, Reno, Nevada for the Court to consider the motion (the "Motion") filed by SMITH PROPERTIES, a Nevada general partnership, JIM'S ENTERPRISES, INC., a Nevada corporation, STATE LINE HOTEL, INC., a Nevada corporation, STATE LINE PROPERTIES, INC., a Utah corporation, STATE LINE CASINO, a Nevada general partnership, STATE LINE PROPERTIES, LTD., a Utah limited partnership, and STATE LINE APARTMENTS, a Utah general partnership (collectively, the "Debtors"), Chapter 11 Debtors and Debtors in Possession, for an order of this Court approving the Debtors' proposed bidding procedures in connection with the Debtors' proposed sale of a substantial amount of their assets to Wendover Casinos, Inc., Wendover Commercial Properties, Inc., and Peppermill Properties, LLC.  Appearances were made as set forth on the record of this Court.

This Court, having reviewed the Motion, the objection to the Motion filed by the Official Committee of Unsecured Creditors, the statements, arguments and representations of the parties made at the hearing on the Motion, notice of the Motion and the hearing on the Motion having been provided, and good cause appearing therefore,

IT IS HEREBY ORDERED that the Debtors' proposed bidding procedures which have been modified in accordance with the Court's comments, a copy of which is attached hereto as Exhibit "1", are approved.

<u>IT IS SO ORDERED</u>:

Dated: April 16, 2002

THE HONORABLE GREGG W. ZIVE
UNITED STATES BANKRUPTCY JUDGE

3

Exhibit 1

# BIDDING PROCEDURES[1]

The sale of the Assets and the Real Properties under the Asset Purchase Agreement, the Real Property Purchase Agreements Nos. 1 and 2, and the Consulting Agreement (collectively the "Agreements") is subject to higher or otherwise better offers which must be submitted in advance of the hearing before the Bankruptcy Court to select the highest and best bid (the "Sale Hearing") in conformity with certain bidding and notice procedures and fee agreements (the "Sale Procedures") set forth below.

## The Sale Hearing

At the Sale Hearing, the Sellers will seek the entry of an order authorizing and approving the sale of the Assets and the Real Properties (the "Sale Order") (i) if no other Qualified Bid (as hereafter defined) is received, to the Buyers pursuant to the terms and conditions set forth in the Agreements, or (ii) if another Qualified Bid is received by the Sellers, to the Buyers or such other Qualified Bidder as the Sellers, in the good faith exercise of their business judgment after consultation with the Banks and the Official Committee of Unsecured Creditors (the "Committee"), may determine to have made the highest or otherwise best offer to purchase the Assets and the Real Properties, consistent with the Sale Procedures (the "Successful Bidder"). If the Buyers are not the Successful Bidder, the Break-up Fee will be paid by the Debtors upon entry of the Sale Order.

## Determination of the Sellers

The Sellers, in consultation with the Banks and the Committee shall (i) determine whether any Person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the Agreements.

1

**EXHIBIT 1**

respective due diligence investigations regarding the Sellers generally, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offer made to purchase the Assets and the Real Properties (collectively, the "Bidding Procedures"). Any person who wishes to participate in the Bidding Process must be a Qualified Bidder. Neither the Sellers, the Banks, nor the Committee, nor their representatives, shall be obligated to furnish any information of any kind whatsoever relating to the Sellers to any Person who is not a Qualified Bidder.

### Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, in order to participate in the Bidding Process, each Person ("Potential Bidder") must deliver to the Sellers:

A.  An executed confidentiality agreement in the form of that attached hereto as Attachment A; and

B.  Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to the Sellers, the Banks, the Committee and their advisors, which financial information shall demonstrate the financial capability of the Potential Bidder to consummate the purchase of the Assets and the Real Properties should the Potential Bidder be the Successful Bidder.

A Potential Bidder which satisfies the foregoing requirements and which the Sellers, in consultation with their lenders and the Committee, have determined in good faith is reasonably likely (based on availability of financing, experience and other considerations) to be able to consummate a purchase of the Assets and the Real Properties if selected as the Successful Bidder, shall be considered a

2

Qualified Bidder. Within two business days of each Potential Bidder's delivery of all of the materials required in paragraphs (A) and (B) above, the Sellers shall notify such Potential Bidder in writing as to whether such Potential Bidder shall be considered a Qualified Bidder. Once a Potential Bidder has been determined to be a Qualified Bidder, the Sellers shall cause to be delivered (unless previously delivered) to such Qualified Bidder (i) a confidential memorandum containing information and financial data relative to the Assets and the Real Properties and the Sellers generally (the "Confidential Memorandum") and (ii) a copy of the Agreements.

### Due Diligence

In order to obtain due diligence access or additional information from the Sellers, each Qualified Bidder must first advise the Sellers of its preliminary (non-binding) determination regarding (i) purchase price range and (ii) the nature and extent of due diligence it may wish to conduct, provided the due diligence shall not extend beyond the Sale Hearing. Based upon its evaluation of the foregoing information and such additional factors as the Sellers, the Banks and the Committee shall determine to be relevant, the Sellers, the Banks and the Committee shall evaluate the bona fides and seriousness of each Qualified Bidder. Only such Qualified Bidders which the Sellers, the Banks and the Committee determine in good faith to be serious and bona fide bidders shall be afforded due diligence access to the Sellers. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such bidders.

### Bid Deadline

Any Qualified Bidder that desires to make a bid shall deliver six (6) copies of its bid to Ron Bender, Esq. at Levene, Neale, Bender, Rankin & Brill L.L.P., 1801 Avenue of the Stars, Suite 1120,

3

Los Angeles, California 90067, not later than 4:00 p.m. (PST) on May 6, 2002. The Sellers shall then forward copies of each bid to counsel for the Banks, the Buyers, and the Committee no later than 4:00 p.m. (PST) on May 7, 2002.

## Minimum Bid Requirements

Each bid must be made upon terms and conditions substantially similar to those contained in the Agreements (other than economic terms such as purchase price and payment terms) and must specifically set forth such amendments and modifications to the Agreements which the bidder would propose if it were to be the Successful Bidder (the "Marked Contract"); provided, however no Marked Contract shall include, and no Qualified or Successful Bidder shall be entitled to the Break-Up Fee or payment of Expenses as provided in the Asset Purchase Agreement. No initial overbid will be considered by the Sellers unless it:

A.  provides for a Purchase Price in the amount of at least $49.6 million[2] (the "Purchase Price" consisting of $43 million for the assets included in the Asset Purchase Agreement, $3.1 million for the assets included in the Real Property Purchase Agreement No. 1, and $3.5 million for the assets included in the Real Property Purchase Agreement No. 2), plus the Break-Up fee of $2 million, plus the Expenses reimbursement to Buyers of up to $500,000, plus $100,000, for a total of $52.2 million and shall not be on terms materially different than the terms of the Agreements;

B.  is not conditioned on obtaining financing or on the outcome of unperformed due

---

[2] This amount does not include the $1.2 million that the Buyers have agreed to pay for the non-compete and consulting agreements, as a competing bidder is not required to pay these amounts if it chooses not to enter into the

4

        diligence by the bidder with respect to the Sellers (unless such conditions are waived at or prior to the Sale Hearing), but may be subject to the accuracy in all material respects at the closing of that transaction of specified representations and warranties or the satisfaction in all material respects at the closing of the transaction of specified conditions, none of which shall be materially different than those set forth in the Agreements; and

C.    is accompanied by (i) a Marked Contract, (ii) a letter stating that the bidder offers to purchase the Assets and the Real Properties upon the terms and conditions set forth in the Marked Contract, and further provides that such offer shall be irrevocable until the day on which the Bankruptcy Court approves a competing transaction; (iii) a certified check in the amount equal to TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000) payable to the order of "Levene, Neale, Bender, Rankin & Brill L.L.P. in Trust for State Line Hotel, Inc." (together with interest, if any earned thereon, the "Good Faith Deposit") which shall be held and/or deposited as hereafter set forth; and (iv) written evidence of a commitment for financing or other evidence of ability to consummate the transaction.

A bid received from a Qualified Bidder that conforms to the above requirements shall constitute a Qualified Bid. The Agreements executed by the Buyers shall constitute a Qualified Bid regardless of whether the Buyers satisfy the above requirements.

### Bidding Increments

After all the Qualified Bids have been received, the Bankruptcy Court shall conduct an

---

non-compete and consulting agreements.

auction at the time of the Sale Hearing. The bidding shall start at the Purchase Price stated in the highest Qualified Bid and thereafter in subsequent higher increments of $100,000 of the Purchase Price (as adjusted for bids by Buyers as set forth below). If a higher Qualified Bid is received from a party other than the Buyers, and the Buyers wish to bid further, Buyers shall be permitted, when the last Qualified Bid is received, to match the last bid; however, the Buyers' overbids shall not include amounts for the Break-Up Fee or the Expenses reimbursement. By way of example, if a Qualified Bidder makes an overbid of $52.2 million (see Minimum Bid Requirements above), the Buyers' next overbid would be $49.8 million, or $200,000 higher than the Purchase Price. The next bid by a competing Qualified Bidder would then have to be $52.4 million, consisting of the Purchase Price, the Break-Up fee, the Expenses reimbursement, plus $300,000. The next overbid by Buyer would then be $50 million, and so on.

Discretion to Accept Qualified Bids

The Sellers presently intend to sell the Assets and the Real Properties pursuant to the highest or otherwise best Qualified Bid received, whether received from the Buyers or another Qualified Bidder. While the Sellers may request the Bankruptcy Court to approve a particular Qualified Bid, such request shall not constitute acceptance by the Sellers of such bid, except with respect to the bid of the Buyers as represented by the Agreements (subject to higher and better Qualified Bids and subject to Court approval). The Sellers shall not be deemed to have accepted any other bid unless and until such bid and the Sellers' acceptance thereof have been approved by order of the Bankruptcy Court. The Sellers will have no obligation to formally accept any bid made except the bid of the Buyers as represented by the Agreements assuming it is the highest or otherwise best Qualified Bid. In the event the Buyers are the Successful Bidder at the Initial Purchase Price upon failure of a

6

previously accepted Competing Transaction, the Break-Up Fee shall not be payable or, if already paid, shall be returned to the Sellers.

### Return of Good Faith Deposit

The Good Faith Deposit will be disbursed either to the Sellers, or in accordance with the Sale Order in the case of a Successful Bidder, or returned to the Qualified Bidder, if the Qualified Bidder is not the Successful Bidder. If a Qualified Bidder is the Successful Bidder at the hearing, but fails to consummate the Sale, the Good Faith Deposit shall be non-refundable.

### Representations and Warranties

The sale of the Assets and the Real Properties shall be without representations or warranties of any kind, nature or description by the Sellers, the lenders, the Committee, their agents or the estate, except to the extent set forth in the Agreements or the Marked Contract, as the case may be. Except as otherwise provided in the Agreements or the Marked Contract, as the case may be, on the Closing Date, the Assets and the Real Properties shall be free and clear of all pledges, liabilities, claims, liens, security interests, encumbrances, charges, options and interests thereon (collectively the "Transferred Liens"), such Transferred Liens to attach to the net proceeds of the sale of the Assets and the Real Properties or as required by the Sale Order.

### Modifications

Except with respect to the Buyers' bid as represented by the Agreements which the Sellers have accepted (subject to higher or better Qualified Bids and subject to Court approval), the Sellers may, in consultation with their lenders and the Committee: (a) determine which Qualified Bid, if any, is the highest or otherwise best offer and (b) reject at any time prior to entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid which, based upon the Sellers' determination

as set forth above, is deemed to be (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Sale Procedures or these terms and conditions of sale, or (iii) contrary to the best interests of the Sellers, their bankruptcy estates, and their creditors. The Bankruptcy Court, at or before the Sale Hearing, may impose such other terms and conditions as it may determine to be in the best interests of the Sellers' estates, their creditors and other parties in interest.

## ATTACHMENT A

### CONFIDENTIALITY AGREEMENT

[DATE]

Dear [Bidder];

In connection with your interest and potential involvement in the bidding process in respect to the sale of the Assets (as such term is defined in the Bidding Procedures, a copy of which has previously been provided to you) in accordance with the Bidding Procedures authorized by the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") in the proceedings which are being jointly administered under the Chapter 11 bankruptcy case of State Line Hotel, Inc., Case Number BK-N-02-50085 GWZ, Houlihan Lokey is furnishing you certain information pertaining to the Sellers, which information is non-public, confidential and/or proprietary in nature. Such information, in whole or in part, whether written or oral, together with any analyses, summaries, compilations, studies, abstracts or documents prepared during the review of the Sellers by you, your agents, or employees, which contain, are based upon or otherwise reflect such information, is hereafter referred to as the "Evaluation Material."

As a condition of furnishing you with the Evaluation Material, you agree to use it according to the following terms:

> (1) You shall use the Evaluation Material <u>solely</u> for the purpose of evaluating your interest in participating in the sale, joint venture, recapitalization, investment in or other transaction involving the Sellers and the Assets (a "Transaction"). You shall keep the Evaluation Material strictly confidential, except that you may disclose the Evaluation Material or portions thereof to those of your directors, officers, employees and agents (collectively, "Representatives") who need to know such information for the purpose of evaluating the

8

Transaction with you and who also agree to be bound by this agreement as if they were parties hereto. You shall be responsible for any breach of this agreement by any of your Representatives.

(2) In the event that you or any of your Representatives become legally compelled to disclose any of the Evaluation Material, you shall provide Houlihan Lokey and the Sellers with prompt prior written notice of such requirement so that the Sellers, or Houlihan Lokey as its agent, may (a) seek a protective order or other appropriate remedy and/or (b) waive compliance with the terms of this agreement. If a protective order or other remedy is not obtained, or the Sellers waive compliance with the terms of this agreement, you shall disclose only that portion of the Evaluation Material which you are advised by written opinion of counsel is legally required and shall exercise your best efforts to ensure the confidential treatment of such Evaluation Material.

(3) If a Transaction is not consummated by you or if the Sellers or Houlihan Lokey so requests, you shall promptly return to Houlihan Lokey all copies (including originals) of the Evaluation Material in your possession or in the possession of your Representatives, and you shall promptly destroy all copies (including originals) of any analyses, studies, abstracts or other documents prepared by you or your Representatives or for your or your Representatives' use containing or reflecting any Evaluation Material. Notwithstanding the return or destruction of Evaluation Material, you and your Representatives will continue to be bound by your obligations of confidentiality and other obligations hereunder.

(4) Without the prior written consent of the Sellers or Houlihan Lokey, neither you nor your Representatives shall disclose to any person or entity (a) that any investigations, discussions or negotiations are taking place with you or your Representatives relative to a possible Transaction, (b) that you or your Representatives have requested or received any Evaluation Material, or (c) any of the terms, conditions or other facts with respect to any possible Transaction, including the status thereof.

(5) Although the Sellers and Houlihan Lokey have endeavored to include in the Evaluation Material information known to them which they believe to be relevant for the purpose of your investigation, you understand and agree that neither the Sellers nor Houlihan Lokey has made or is making any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material, and neither the Sellers nor Houlihan Lokey, or any of their respective officers, directors, employees, agents or affiliates shall have any liability to you or any other person or entity relating to or resulting from the use of the Evaluation Material or any errors therein or omissions therefrom.

(6) You agree that money damages would not be a sufficient remedy for any breach of this agreement by you or your Representatives and that, in addition to all other remedies, the Sellers shall be entitled to equitable relief, including specific performance and injunctive or other equitable relief, in the event of any breach or threatened breach of the provisions of this

9

agreement. In the event a dispute arises relating to this agreement, you hereby consent to the exclusive jurisdiction of the Bankruptcy Court to resolve such dispute and all matters asserted, or that could have been asserted, relating thereto. Furthermore, if the Bankruptcy Court determines that you or any of your Representatives have breached this agreement, you shall be liable for and pay to the Sellers the reasonable legal fees it incurs in connection with such litigation, including any appeal therefrom.

(7) No failure or delay by the Sellers or Houlihan Lokey in the exercise of any right, power or privilege hereunder will operate as a waiver thereof. This agreement can only be modified or waived in writing.

(8) You understand that the Sellers and Houlihan Lokey are not, by disclosing the Evaluation Material, binding themselves to deal exclusively with you in connection with such possible Transaction and that neither you nor the Sellers are obligated in any way to consummate a Transaction until a definitive and binding agreement (if any) is executed by you and the Sellers relating to such transaction and approved by the Bankruptcy Court.

Please acknowledge your acceptance of the terms and conditions stated herein by signing and returning this agreement to Houlihan Lokey.

SELLERS                                          ACCEPTED AND AGREED:


By _____    By _____

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a member of Levene, Neale, Bender, Rankin & Brill, L.L.P., counsel for Debtors and Debtors-in-Possession herein. I am a member of the Bar of the State of California and am admitted pro hac vice to appear before the United States Bankruptcy Court for the District of Reno, Nevada. I am not a party to the within action and my business address is: 1801 Avenue of the Stars, Suite 1120, Los Angeles, California 90067-5805.

On April 12, 2002 I served the foregoing document(s) described as: **ORDER APPROVING BIDDING PROCEDURES** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

**SEE ATTACHED SERVICE LIST**

__X__ (By Mail) I caused such envelope with postage thereon, fully prepaid to be placed in the United States mail. Executed on April 12, 2002, at Los Angeles, California.

_____ (By Facsimile) I caused said document to be served via facsimile. Executed on March ___, 2002, at Los Angeles, California.

_____ (By Personal Service) I caused such envelope to be delivered by hand to the offices of the addressee. Executed on March ___, 2002, at Los Angeles, California.

_____ (By Federal Express and Express Mail) I caused said document to be sent via Federal Express or for next business morning delivery. Executed on March ___, 2002, at Los Angeles, California.

_____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__x__ (Federal) I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made.

/s/ Nellwyn W. Voorhies
Nellwyn W. Voorhies

| | | |
|---|---|---|
| Office of the U.S. Trustee (1977-2)<br>300 Booth Street, Suite 2129<br>Reno, NV 89509 | Michael W. Devine (1977-3)<br>State Line Silver Smith Casino Resorts<br>101 Wendover Blvd.<br>Wendover, NV 89883 | Debtor's Local Counsel<br>Sallie B. Armstrong, Esq. (1977-5)<br>Armstrong Miller LLP<br>427 West Plumb Lane<br>Reno, NV 89509 |
| Bank Group's Counsel<br>Robert L. Morrison, Esq. (1977-4)<br>Phillsbury Winthrop<br>725 S. Figueroa Street #2800<br>Los Angeles, CA 90017 | Assistant U.S. Trustee<br>Nicholas Strozza<br>United States Dept. of Justice<br>Office of the U.S. Trustee<br>300 Booth St., #2129<br>Reno, NV 89509 | Bank's Local Counsel<br>Nile Leatham, Esq.<br>Kolesar & Leatham, CHTD.<br>3320 W. Sahara Ave., #380<br>Las Vegas, NV 89102 |
| Frankie Sue Del Papa (1977-65)<br>Attorney General<br>Division of Gaming<br>555 E. Washington Ave., #3900<br>Las Vegas, NV 89101 | Frankie Sue Del Papa (1977-66)<br>Attorney General<br>Division of Gaming<br>100 N. Carson St.<br>Carson City, NV 89701 | Gaming Control Board (1977-67)<br>Corp. Sec. Division<br>1919 E. College Parkway<br>Carson City, NV 89706 |
| Attorneys for International Gaming Technology<br>Bruce T. Beesley, Esq.<br>Beesley, Peck, Matteoni & Cossitt, Ltd.<br>5011 Meadowood Mall Way, #300<br>Reno, NV 89502 | Michael A. T. Pagni, Esq.<br>McDonald Carano Wilson et al.<br>241 Ridge St.<br>Reno, NV 89501 | Claudia Cormier, Esq.<br>Attn: Legal Dept.<br>PDS Gaming<br>6171 McLeod Dr.<br>Las Vegas, NV 89120 |
| Attorneys for SYSCO Intermountain Food Svc<br>Mark S. Swan, Esq.<br>Richer, Swan & Overholt, PC<br>6925 S. Union Park Center, #450<br>Midvale, UT 84047-4139 | Attorneys for US Playing Card Company<br>Joseph A. Robinette, Asst. General Counsel<br>Legal Dept.<br>4590 Beech St.<br>Cincinnati, OH 45212<br>72 | IBM Credit Corporation<br>Attn: Kelly Lewis<br>Retructuring Group – MD NC317<br>North Castle Dr.<br>Armonk, NY 10504 |
| Attorneys for Core-Mark<br>Robert R. Kinas, Esq.<br>Curtis & Associates/Snell & Wilmer LLP<br>3800 Howard Hughes Pkwy, #1000<br>Las Vegas, NV 89109 | Attorneys for Bally Gaming, Inc.<br>Jeanette E. McPherson, Esq.<br>Curtis & Associates, Affiliated with Snell & Wilmer<br>3800 Howard Hughes Parkway, 10th Floor<br>Las Vegas, NV 89109 | Attorneys for James W. Smith, et al.<br>Janet L. Chubb, Esq.<br>Jones Vargas<br>100 W. Liberty St., 12th Floor<br>P.O. Box 281<br>Reno, NV 89504-0281 |
| Attorneys for Nicholas & Company, Inc.<br>Michelle M. Erlach, Esq.<br>Robison, Belaustegui, Sharp & Low<br>71 Washington Street<br>Reno, NV 89503<br>775/329-3151 | Attorneys for Zions National Bank<br>Mark D. Houle, Esq.<br>650 Town Center Drive, 7th Floor<br>Costa Mesa, CA 92626 | Request for Special Notice<br>Leonard Bryan, Chief Financial Officer<br>Nicholas & Company<br>5520 West Harold Gatty Drive<br>Salt Lake City, UT 84116 |
| Request for Special Notice<br>George Adondakis, Esq.<br>Hobbs, Adondakis & Olson, LC<br>Felt Building<br>341 South Main Street, Suite 208<br>Salt Lake City, UT 84111 | Attorneys for Young Electric Sign Co.<br>Anna W. Drake, Esq.<br>215 South State, Suite 800<br>Salt Lake City, UT 84111 | Attorney for Valiant Products Corp.<br>Philip T. Varricchio, Esq.<br>Muije & Varricchio<br>302 E. Carson Ave., #550<br>Las Vegas, NV 89101 |

Counsel to Committee of Unsecured Creditors
David C. McElhinney, Esq.
Brett A. Axelrod, Esq./Kaanan E. Thomas, Esq.
Beckley Singleton Chtd.
1875 Plumas Street # 1
Reno, NV 89509

Counsel to Committee of Unsecured Creditors
Thomsen J. Young, Esq
Pachulski Stang Ziehl Young & Jones
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067-4102